IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED

2011 MAR -7 P 1: 21

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff | ) | |
| v. | ) | CRIMINAL ACTION |
| | ) | 1:08-cr-282  unsealed 3/21/11 |
| BRANDON MICHAEL STACY | ) | UNDER SEAL LOCAL RULE 49(J) |
| | ) | The Honorable T.S. Ellis, III |
| Defendant | ) | |

### DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION FOR REDUCTION OF SENTENCE

COMES NOW the Defendant, Brandon Michael Stacy, by counsel, and moves this Honorable Court to grant the government's motion for reduction of sentence in the above-styled cause.

The United States has recommended to this Court a fifty percent (50%) reduction of the Defendant's initial sentence of 120 months. For the reasons set forth below the Defendant respectfully moves this Court to grant a reduction, commensurate with that received by the Defendant's only indicted co-conspirator in this case, Joseph Battista.

### MR. STACY'S COOPERATION

As set forth in the government's pleading, Mr. Stacy, Mr. Battista and an unindicted co-conspirator were arrested when a vehicle operated by Mr. Stacy was stopped by law enforcement as a result of a traffic violation. Incident to the traffic stop, police seized $34,000.00 in cash, three (3) guns and cocaine cutting agent from the vehicle. At the time of the traffic stop, Mr. Battista was already the target of a drug trafficking and firearms investigation. Mr. Stacy was unknown to law enforcement.



subsequent to his conviction, Mr. Stacy was approached by agents of the Internal Revenue Service who sought his cooperation regarding the investigation of the ownership of Southern Management Corporation, an investment company with which Mr. Stacy had a tangential business connection. Although Mr. Stacy was fully debriefed by government agents with regard to possible criminal conduct at Southern Management, and the agents believed that the information he provided was truthful, his knowledge of Southern Management was so limited that the agents were unable to move forward based upon the information that Mr. Stacy was able to provide). Likewise, we do not believe that there would be any disagreement that had Mr. Stacy had the same level of knowledge about criminal activity that Mr. Battista possessed, Mr. Stacy's history indicates that he would have personally provided that information. Because Mr. Stacy's involvement in criminal activity was essentially limited to his connection to Mr. Battista and those close to him, the usable evidence that the government obtained regarding significant illegal conduct came from Mr. Battista's lips, but was clearly derived from the cooperation offered by Mr. Stacy. To grant a sentence for Mr. Battista greater than that granted to Mr. Stacy would essentially be the sole result of Mr. Battista's substantial involvement in serious ongoing criminal activity of which Mr. Stacy had no knowledge because he was not involved.

## PERSONAL CHARACTERISTICS OF THE DEFENDANT

When the Court imposed sentence on October 24, 2008, the Court observed that it had no discretion to impose a sentence of less than 120 months. However, the Court invited counsel to allocate on the Defendant's behalf and, in anticipation of a motion to reduce sentence in the future, to remind the Court of those comments at the appropriate time. We have included herein as Attachment 1, a transcript of the sentencing hearing including admonitions from the Court to

Mr. Stacy regarding the effect of his guilty plea and those things that he needed to do in going forward with his life.

Significantly, although the Court recommended Mr. Stacy for incarceration at FCI Cumberland and that he be allowed to participate in the intensive 500 hour drug treatment program offered by the Bureau of Prisons, events conspired such that Mr. Stacy has, since being classified, served his entire sentence at FCI Loretto. Although the 500 hour drug treatment program is not offered there, he has, in fact, completed all of the drug treatment programs offered at Loretto.

Perhaps most gratifying is that, as contained at page 17 of the sentencing transcript, the Court challenged Mr. Stacy that, if he was sincere about what had happened to him and its effect on his life that he carry that message forward with regard to both his contacts with others and the manner in which he will live his life going forward. We submit with great confidence that Mr. Stacy has taken the Court's word to heart.

In counsel's experience, it is extraordinarily unusual for correctional officers to come forward in support of a particular inmate. In this case, we have submitted at Attachment 2, letters from two (2) correctional officers at FCI Loretto, Officers Mudrey and Gresko, who without reservation agreed to offer their impressions of Mr. Stacy. When the Court considers the words they have written and the source of those words, there is perhaps no more powerful testament to the lesson that Mr. Stacy has learned and the potential that he possesses to turn his life completely around.

In addition to the lessons that he has learned while incarcerated, there is further reason to be confident that Mr. Stacy is in a position to live a productive, law-abiding wholesome life upon his release. As the Court may recall from the sentencing in this case, Mr. Stacy is blessed to

have a loving and supportive family. Mr. Stacy's mother, father, sister and wife wrote eloquent heartfelt letters to the Court at the time of sentencing on October 24, 2008. They have likewise asked counsel to submit updated letters to the Court with regard to the Court's decision regarding Mr. Stacy's ultimate sentence. Those letters from his mother, father, sister and wife along with a letter from a long-time family friend, Robert A. Klimek, Jr. are contained at Attachment 3 appended hereto.

We respectfully ask the Court to credit the letters from Mr. Stacy's family members for what they are, the sincere and heartfelt outpouring of loved ones who have visited Mr. Stacy every single week since he has been incarcerated and who continue to have faith in his ability to redeem himself. In addition, it is very clear that these are people who are committed to Mr. Stacy and his well-being.

In addition to family support, there are also practical considerations, not the least of which is making a living, and to be considered when one is released from incarceration. In anticipation of his release, Mr. Stacy and his family have taken the proactive step of, on their own initiative, seeking productive employment for Mr. Stacy. We would ask the Court to consider the letter from Christopher M. Kerns, Vice President of Fort Meyer Construction Corporation contained hereto at Attachment 4. It appears that there is a strong likelihood that Mr. Stacy, upon his release will have the potential for immediate, productive employment.

Finally, we would humbly ask the Court to consider the words of Mr. Stacy himself contained in his letter to the Court contained hereto at Attachment 5. From Mr. Stacy's letter, it appears that he gets it. Most encouragingly, it appears that he gets that his conduct impacts not only him and not only his immediate family, but all those in the community and we submit that

this is a young man who is ready to do good. We humbly ask the Court to grant him that opportunity.

## CONCLUSION

Everyone involved in this prosecution acknowledges that Mr. Stacy committed a serious crime. There is also agreement that he immediately came forth and admitted that crime and began a path to redemption that continues to this day.

We believe that the cooperation he provided was significant and, standing alone, warrants consideration consistent with that given by the Court in Mr. Battista's case (a sentence reduction of seventy-three percent (73%) and by the United States to Mr. Stacy's co-conspirator (who as a result of his cooperation, generated in large part by information provided by Mr. Stacy, remains a government cooperator and unindicted). Simple mathematics tell us Mr. Stacy cannot at this point receive a sentencing benefit as great as that received Mr. Battista. A seventy-three percent (73%) reduction in Mr. Stacy's sentence, coupled with good time credits would have resulted in Mr. Stacy's release in the Fall of 2010.

But beyond cooperation, we suggest that there are more compelling reasons supporting Mr. Stacy's release. He is an individual who has proved to those close to him, including family, friends, a future employer and those charged with supervising his behavior during his incarceration that he is someone who is ready to move into society and not just live a law abiding life but to carry forth the mission entrusted to him by the Court at sentencing on October 24, 2008. Mr. Stacy will never be more ready than he is today to abide the Court's Order and go into the community in an effort to use his mistakes to make the lives of others better by addressing school, church and civic organizations about his firsthand account of exactly how bad choices can ruin an otherwise pristine life.

In fact, Mr. Stacy's association with Mr. Battista spanned less than two (2) months and consisted essentially of Mr. Stacy serving as a middle man in some of Mr. Battista's gun and drug transactions and, on several occasions, driving Mr. Battista to drug transactions in return for payment in small quantities of cocaine.

Even though he was not the target of an on-going investigation, Mr. Stacy began his cooperation with the United States within moments of his arrest on March 23, 2008. As set forth in the government's pleading that cooperation was complete, steadfast and of remarkable value to the United States.

The Defendant's timely cooperation gave the government instant access to an individual with firsthand knowledge of Mr. Battista's criminal activity. This led directly to Mr. Battista's guilty plea and his subsequent cooperation which, in turn, directly resulted in the successful prosecution of an extremely significant methamphetamine ring originating in Mexico and facilitated from the Fort Dix Bureau of Prisons facility. Just as the Court recognized the significance of Mr. Battista's cooperation by granting a seventy-three percent (73%) reduction in his sentence, we submit that Mr. Battista's cooperation was directly derived from the cooperation offered by Mr. Stacy and that Mr. Stacy's reduction should, therefore, be no less than that granted to Mr. Battista.[1]

It is clear that Mr. Stacy came forward promptly, with no promise of leniency and provided the government valuable information. (It is perhaps a measure of the government's assessment of Mr. Stacy's credibility that, in addition to the cooperation set forth herein,

---

[1] In the first full paragraph of the government's motion for reduction of sentence the government acknowledges that in addition to Mr. Battista, the Defendant has provided truthful information about other individuals who engaged in illegal drug trafficking. Upon information and belief, at least one of the individuals about whom Mr. Stacy provided information was a co-conspirator of Mr. Stacy and Mr. Battista. That individual has likewise provided information to the government and, as a result of that on-going cooperation has not been subject to any criminal prosecution.

We respectfully and humbly ask the Court to give Mr. Stacy that opportunity today.

Respectfully submitted,

BRANDON MICHAEL STACY
By Counsel

_____
James C. Clark, Esquire
Virginia Bar No. 15910
Attorney for Defendant
LAND, CLARK, CARROLL, MENDELSON & BLAIR, P.C.
524 King Street
Alexandria, Virginia 22314
Phone: (703) 836-1000
Fax:    (703) 549-3335
jclark@landclark.com

## Certificate of Service

I hereby certify that on the 7th day of March 2011, this was hand delivered to the Office of the United States Attorney.

_____
James C. Clark, Esquire
Virginia Bar No. 15910
Attorney for Defendant
LAND, CLARK, CARROLL, MENDELSON & BLAIR, P.C.
524 King Street   Alexandria, Virginia 22314
Phone: (703) 836-1000
Fax:    (703) 549-3335
jclark@landclark.com